1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   OAKLEY, INC.,                                    Case No. 11cv2079 DMS (BLM)

12                              Plaintiff,    **ORDER GRANTING**
                                              **DEFENDANT'S MOTION TO**
13          vs.                               **STAY**

     SEAVER COMPANY,
14
                                Defendant;
15   _____

16   AND RELATED COUNTERCLAIM.

17

18          Pending before the Court in this patent infringement action is Defendant Seaver Company's

19   ("Seaver") motion to stay pending the outcome of *ex parte* patent reexamination by the United States

20   Patent and Trademark Office ("PTO") involving U.S. Patent No. 5,387,949 (the "'949 Patent").

21   Plaintiff Oakley, Inc. ("Oakley") opposed the motion and Seaver replied.  For the reasons which

22   follow, Seaver's motion to stay is **GRANTED**.

23          On September 9, 2011, Oakley filed a patent infringement suit alleging Seaver's products

24   infringe two of its patents, the '949 Patent and U.S. Design Patent No. D496,680 (the "D680 Patent").

25   The '949 Patent  "is directed to an eyeglasses connection device for connecting the eyeglasses lens

26   to respective ear stems.  The connection device allows the user of the eyeglasses to interchange

27   different ear stems and lenses, creating different colors or configurations for the eyeglasses." (Second

28   Decl. of Robert L. Kinder in Supp. of Def. Seaver's Mot. to Stay ("Second Kinder Decl."), Ex. A

(order granting request for *ex parte* reexamination ("Reexamination Order") at 3).)  The D680 Patent relates to the design for an eyeglass front.

On October 28, 2011, Seaver filed an answer and a counterclaim.  On November 1, 2011, it filed a request for *ex parte* reexamination of the '949 Patent as to ten of its fifteen claims.  The request was granted on January 10, 2012.  (*See* Reexamination Order.)  The PTO found "substantial new questions of patentability . . . [were] raised in the request" with respect to each of the ten claims based on four prior art citations.  (*Id*. at 2, 17.)

Seaver argues this action should be stayed in its entirety pending reexamination because efficiencies of judicial resources and cost savings to the parties would result should the PTO invalidate or narrow the claims.  Seaver claims this case is in its early stages and no undue prejudice would result to Oakley from the stay because the '949 Patent has expired, and Seaver has agreed to preserve evidence during the stay and halt the sales of the product accused of infringing the D680 Patent. Oakley opposes the stay claiming it will be prejudiced in prosecuting the infringement claim based on the D680 Patent, which is not being reexamined, and reexamination of the '949 Patent will not resolve all the issues in this case.

"Congress intended the reexamination process to provide an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the PTO's expertise." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988).  The focus of the reexamination is essentially the same as in the initial patent examination, "at which a preponderance of the evidence must show nonpatentability before the PTO may reject the claims of a patent application.  The intent underlying reexamination is to 'start over' in the PTO with respect to the limited examination areas involved, and to re-examine the claims . . . as they would have been considered if they had been originally examined in light of all the prior art of record in the reexamination proceeding." *Id*. at 1427 (internal quotation marks and citations omitted, emphasis in original).  At the conclusion of the reexamination, the PTO publishes "a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable."  35 U.S.C. § 307(a).

"The stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606, *aff'd on reh'g*, 771 F.2d 480 (Fed. Cir. 1985). However, "[t]he court is not required to stay judicial resolution in view of the reexamination," *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001), but has discretion to grant or deny a stay, *see Patlex*, 758 F.2d at 603, *Ethicon*, 849 F.2d at 1426-27.

> When determining the appropriateness of a stay pending reexamination, the court considers the following three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

*In re Cygnus Telecomm. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (internal quotation marks and citations omitted).

In 2011 the PTO reported the average *ex parte* reexamination took 25.6 months, with a median pendency of 19.9 months. (Decl. of Ali S. Razai in Supp. of Oakley, Inc.'s Opp'n to Seaver's Mot. to Stay ("Razai Decl.") Ex. 3.) Oakley maintains a stay would unnecessarily delay its prosecution of the claims asserted n this case. To the extent the argument relates to Oakley's infringement claim based on the '949 Patent, Oakley does not dispute the patent has recently expired, and does not explain how the delay would prejudice the prosecution of this claim.

Oakley's prejudice argument is based primarily on the delay in enforcement of the D680 Patent. It contends that, if the case is stayed while the '949 Patent is in reexamination, Seaver would be free to continue marketing eyewear infringing the D680 Patent. It is undisputed that the '949 Patent and the D680 Patent are unrelated, that none of the products accused of infringing one patent are also accused of infringing the other, and that the reexamination will not address any issues relevant to the D680 Patent.

However, Seaver has already taken steps to avoid prejudice to Oakley. Oakley alleges Seaver's BOLT 02 sunglasses infringe the D680 Patent. (*See, e.g.,* Opp'n at 6; Razai Decl. Ex. 1.) Seaver voluntarily halted sales of BOLT 02 sunglasses in July 2011 (Decl. of Dean A. Seaver in Supp. of Seaver's Mot. to Stay ("Dean Seaver Decl.") at 1), after it received Oakley's cease and desist letter dated June 14, 2011 (*see* Razai Decl. Ex. 1). The remaining stock of BOLT 02 sunglasses has been

sequestered in a storage warehouse.  (Dean Seaver Decl. at 1, Mot. at 2.)  According to Seaver's President, Seaver has agreed to refrain from making or importing any additional BOLT 02 sunglasses or products adopting the same design until this matter is fully resolved, and has agreed not to remove the sequestered BOLT 02 sunglasses from the warehouse, except by agreement of the parties or permission of the Court.  (*Id.*)  Furthermore, since June 2011, Seaver has taken steps to preserve potentially relevant documents and electronic data related to Seaver products identified in Oakley's cease and desist letter, including BOLT 02 sunglasses, and has agreed to take steps to preserve them until the final resolution of this matter.  (Decl. of Sandra Seaver in Supp. of Seaver's Mot. to Stay ("Sandra Seaver Decl.") at 2.)

Oakley next argues the stay would preclude it from discovery to determine whether any other Seaver products infringe the D680 Patent and obtaining relief as to those products.  This argument is unpersuasive.  Oakley is not necessarily entitled to discovery related to products it merely suspects or speculates infringe the patent.  *See Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, 2007 U.S. Dist. LEXIS 90457 at 9-10 (C.D. Cal. 2007), citing *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990).  "No bright line governs whether discovery can be obtained only for products expressly accused in infringement contentions."  *Dr. Systems, Inc. v. Fujifilm Med. Systems USA, Inc.*, 2008 WL 1734241 at 3 (S.D. Cal. 2008).  Oakley's reliance on *Dr. Systems* for the proposition that it would be entitled to discovery regarding any other products infringing the D680 Patent is unavailing.  The case is distinguishable because the party claiming infringement in *Dr. Systems* identified specific products for which it needed discovery to determine whether they were infringing.  Whereas the accused product in *Dr. Systems* consisted of systems and processes for presenting and viewing medical images.  The potentially infringing products were possibly components of the accused product, software applications, or separate products to be used in conjunction with the accused product.  The infringement issue presented here is the design of sunglasses.  Seaver sunglasses are on display and available for sale to the public at gas stations and convenience stores as well as online. (Dean Seaver Decl. at 1; Reply at 9.)  Oakley does not explain why discovery would be necessary to determine which styles infringe the D680 Patent.  Furthermore, Seaver has halted not only the sales of BOLT 02 sunglasses, but also products "adopting the same

1  design as the BOLT 02 product." (Dean Seaver Decl. at 1.) Oakley's argument that it will be

2  prejudiced because it will not be able to proceed with discovery of other infringing products is

3  therefore rejected.

4        Finally, the amount at issue with respect to the D680 Patent is relatively small. According to

5  Seaver's Chief Financial Officer, the gross sales of BOLT 02 sunglasses totaled approximately

6  $40,000, generating approximately $3,000 in profits. (Sandra Seaver Decl. at 1.) Based on the

7  relatively small amount at issue, Seaver's voluntary cessation of sales, and its representations

8  regarding future sales and preservation of evidence, Oakley's prejudice arguments are unpersuasive.

9        Oakley next maintains Seaver's motion should be denied because the reexamination will not

10  resolve all the issues raised in this case. Oakley cites no binding authority in support of the

11  proposition that resolving all issues is required for a stay pending reexamination. The relevant inquiry

12  is "whether a stay will simplify the issues in question and trial of the case." *In re Cygnus*, 385 F.

13  Supp. 2d at 1023. The PTO has found "substantial new questions of patentability" with respect to ten

14  of the '949 Patent's fifteen claims. (Reexamination Order at 2, 17.) "[S]implification of litigation

15  [may] result from the cancellation, clarification, or limitation of claims, and, even if the reexamination

16  [does] not lead to claim amendment or cancellation, it could still provide valuable analysis to the

17  district court." *Ethicon*, 849 F.2d at 1428. Accordingly, a stay in this case likely will simplify further

18  proceedings with respect to the '949 Patent infringement claims. With respect to the last factor,

19  "whether discovery is complete and whether a trial date has been set," *In re Cygnus*, 385 F. Supp. 2d

20  at 1023, it is undisputed this case is in its very early stages and no dates have been set.

21        Based on the foregoing, Defendant's motion to stay pending *ex parte* reexamination of the '949

22  Patent is **GRANTED**. The Clerk shall administratively close the case. The parties may reopen the

23  case by filing a notice no later than seven calendar dates after receipt of the PTO's final action in the

24  reexamination proceeding. The notice shall include a copy of the PTO's final action.

25        **IT IS SO ORDERED.**

26  DATED: February 22, 2012

27  _____

28  HON. DANA M. SABRAW
    United States District Judge